### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

GODADDY MEDIA TEMPLE INC., a
California Corporation,

              Plaintiff,

      vs.

ANEXIO DATA CENTERS, LLC, DOES 1
through 10,

              Defendants.

C.A. NO.:

COMPLAINT FOR BREACH OF
CONTRACT, ACCOUNT STATED,
BOOK ACCOUNT, UNJUST
ENRICHMENT, AND
**DEMAND FOR JURY TRIAL**

### COMPLAINT

Plaintiff GODADDY MEDIA TEMPLE INC., a California Corporation, ("PLAINTIFF")

alleges as follows against Defendant ANEXIO DATA CENTERS, LLC ("DEFENDANT" or

"ANEXIO"):

### NATURE OF ACTION

1.      This action involves breaches of contractual, statutory, and common law duties

owed by DEFENDANT to PLAINTIFF (collectively "the Parties").

2.      On or about June 15, 2016, the Parties entered into a "MASTER SERVICES

AGREEMENT" ("MSA").  A true and correct copy of the MSA is attached hereto as Exhibit A.

Pursuant to the MSA, DEFENDANT was required to use reasonable efforts to deliver an invoice

for recurring monthly service charges at least thirty days prior to the first day of the month to

which such invoice relates.  ANEXIO offered PLAINTIFF a 10% discount for services associated

with the data center in El Segundo, CA ("LA Data Center") in exchange for advance payment for

the time period from March 1, 2019 through December 31, 2019.  PLAINTIFF advanced payment

to DEFENDANT in the amount of $1,899,713 to cover services from March 1 through December

31, 2019.  On June 20th, 2019, however, DEFENDANT was evicted from the LA Data Center and

LEGAL\48638508\1

ceased to provide PLAINTIFF with services, or access to the LA Data Center pursuant to the terms

of the MSA, leaving a credit balance in the amount of $1,139,827.80 not including interest.

3.      DEFENDANT recognized the debt it owed to PLAINTIFF for its failure to deliver

services per the Parties' contract, and promised to offset, or otherwise provide full credit for the

balance it owes to PLAINTIFF.  Ultimately, however, DEFENDANT failed to provide any offset,

credit, or refund, and failed to provide the services that it promised to PLAINTIFF.

4.      PLAINTIFF was forced to contract with a third party to provide the same, or

substantially similar services at the same location for the same time period in 2019 without

receiving any credit for payment to DEFENDANT.  In spite of repeated requests, DEFENDANT

failed to reimburse PLAINTIFF or provide any value in exchange for the amount it owes to

PLAINTIFF.

## THE PARTIES

5.      At all times mentioned herein, PLAINTIFF was, and is now, an entity organized

under the laws of California with a principal place of business in Los Angeles, California.

6.      At all times mentioned herein, DEFENDANT was, and is now, a Delaware limited

liability company, with its principal place of business at One Bank of America Plaza, 421

Fayetteville Street, Suite 1100, Raleigh, North Carolina 27601.

7.      PLAINTIFF is unaware of the true names and capacities, whether individual,

corporate, associate or otherwise of defendants sued herein as Does 1 through 10, inclusive, and,

therefore, PLAINTIFF sues said defendants by such fictitious names and will ask leave of court to

amend this complaint to show their true names and capacities when the same have been

ascertained.

2

8.    At all times mentioned herein, defendants, and each of them, were the agents, employees, joint venturers, joint tortfeasors and partners of each of their co-defendants and, in doing the things herein described, were acting within the course and scope of their authority as such agents, employees, joint venturers, joint tortfeasors and partners.

## JURISDICTION AND VENUE

9.    PLAINTIFF brings its Complaint under federal diversity jurisdiction, 28 U.S.C. § 1332.  The Parties are completely diverse in citizenship, and the amount in controversy exceeds the jurisdictional minimum.

10.    PLAINTIFF is a California Corporation with its principal place of business in Los Angeles.  DEFENDANT is a Delaware Limited Liability Corporation with its principal place of business in North Carolina.  Therefore complete diversity of citizenship exists.

11.    The total amount of damages sought in this action exceeds the jurisdictional limit as PLAINTIFF is owed a minimum of $1,139,827.80 not including interest.

12.    Venue is proper in this Court because the Parties, by contract, specified that they consent to the mutual and exclusive jurisdiction of the state or federal courts located in the State of Delaware for any action brought in connection with, arising out of, or relating to the MSA. [Exh. A ¶ 15.]

## GENERAL ALLEGATIONS

13.    On or about June 15, 2016, the Parties entered into the MSA.

14.    Pursuant to the terms of the MSA, PLAINTIFF was to pay all fees and charges for services set forth on a "Service Order Form."  PLAINTIFF promptly paid all such fees.

LEGAL\48638508\1

15.     DEFENDANT invoiced PLAINTIFF in advance for services, and offered a 10% discount for advance payment of six months of service, and a 20% discount for advance payment of twelve months of service.

16.     On February 27, 2018, by invoice number 40642 ("Invoice 40642"), DEFENDANT requested advance payment from PLAINTIFF for "ORDER #6861" covering "SERVICE PERIOD 2/1/2018-6/30/2018" in the amount of $1,087,984.44.  Invoice 40642 also included a "Pre-payment discount" of approximately 10%.  A true and correct copy of Invoice 40642 is attached hereto as Exhibit B.  PLAINTIFF promptly paid the entire sum of $1,087,984.44 set forth on Invoice 40642.

17.     Similarly, by an invoice dated June 26, 2018 bearing invoice number 40929 ("Invoice 40929"), for example, DEFENDANT requested that PLAINTIFF pay $1,139,828.13 in advance for the "SERVICE PERIOD" from "7/1/2018-12/31/2018."  The same invoice included a Pre-Payment discount of approximately 10%.  PLAINTIFF promptly paid the entire sum of $1,139,828.13 billed by DEFENDANT to PLAINTIFF on Invoice 40929.  A true and correct copy of Invoice 40929 is attached hereto as Exhibit C.

18.     In February of 2019, the parties discussed a similar discount in exchange for advance payment for services to be rendered from the beginning of March through the end of 2019. ANEXIO ultimately offered a 10% discount to PLAINTIFF for advance payment for services associated with the LA Data Center from March 1 through the end of 2019.  By an invoice dated February 25, 2019 bearing invoice number 5139A ("Invoice #5139A"), DEFENDANT then billed PLAINTIFF for the "SERVICE PERIOD 3/01/19 – 12/31/2019" for services associated with the LA Data Center.  A true and correct copy of invoice #5139A is attached hereto as Exhibit D.  On February 28, 2019, DEFENDANT sent a copy of Invoice #5139A to PLAINTIFF by email.  A

4

service order was attached to the same email.  Invoice #5139A states that DEFENDANT applied

a "Pre-Payment Discount – 10%" in the amount of $211,079.25 for advance payment of services

through the end of the year.  PLAINTIFF promptly advanced payment of $1,899,713.25, the total

amount set forth on Invoice #5139A, for services through the end of the year.

19.     On subsequent invoices, including Invoice No. 5342 dated May 1, 2019 ("Invoice

5342"), DEFENDANT credited PLAINTIFF's advanced payment as "Pre-Payment Application,"

and noted that it was applying a "Pre-Payment Invoices."  A true and correct copy of Invoice No.

5342 is attached hereto as Exhibit E.

20.     On June 20th, 2019, ANEXIO was evicted from the LA Data Center and ceased to

provide PLAINTIFF with services or access to the LA Data Center pursuant to the terms of the

MSA, leaving a credit balance in the amount of $1,139,827.80 ("Credit Balance") not including

interest.

21.     On July 2, 2019 Tony Pompliano of ANEXIO wrote to PLAINTIFF and stated that

PLAINTIFF's expectation for a refund was reasonable.  Specifically, he wrote: "Your expectations

for getting a refund is reasonable, and understood.  Unfortunately, I cannot just release the money

because my lender/ bank has put restrictions on my access to cash."  Mr. Pompliano then suggested

that DEFENDANT apply the Credit Balance to the amount PLAINTIFF was paying on a monthly

basis for services associated with a data center in Ashburn, Virginia.  Specifically, in recognition

of the outstanding Credit Balance, DEFENDANT made the following offer to PLAINTIFF on July

2, 2019: "I want to talk through with you about how we can potentially work together to getting

money released from our bank.  Not trying to get you in the middle of this, but I don't want to

ignore your request, and share with you the current challenges. If in the short term we are unable

5

to get funds released back to [PLAINTIFF] we can apply your deposit to the Ashburn, VA site charges."

22.     During a phone call that took place on July 2, 2019, Tony Pompliano of ANEXIO again suggested to PLAINTIFF that the Parties jointly petition DEFENDANT's bank for release of the Credit Balance owed to PLAINTIFF.

23.     The Parties then entered into an agreement whereby PLAINTIFF was to withhold payments for services associated with the Ashburn ACC4 data center ("Ashburn Data Center") and the Credit Balance would be applied towards those charges.

24.     The Parties then reduced their agreement to a formal written instrument, but DEFENDANT failed to execute it.  When PLAINTIFF made inquiries with ANEXIO's Tony Pompliano in July of 2019 regarding execution of the written instrument, Mr. Pompliano reaffirmed ANEXIO's commitment to honor the Parties' agreement to apply the Credit Balance to charges associated with the Ashburn Data Center.  Specifically, on July 30, 2019, ANEXIO's Tony Pompliano reaffirmed DEFENDANT's commitment to honor the Parties' agreement with respect to the outstanding Credit Balance.  Mr. Pompliano explained that "I will honor our agreement. The bank is pulling me through knot holes about treatment of funds collected and what they think is their collateral . . . .  Again, I am going to honor the agreement - just give me a couple of days to finalize the forbearance."

25.     When PLAINTIFF withheld payment in August pursuant to the Parties' agreement, however, DEFENDANT sent PLAINTIFF a notice of default dated August 16, 2019.  Upon receipt of DEFENDANT's notice of default referencing the default terms under the MSA, PLAINTIFF promptly made payment in the amount of $234,960 to avoid an interruption in services at the Ashburn Data Center.

6

26.     On September 11, 2019, PLAINTIFF wrote to DEFENDANT providing formal notice that all service orders for the LA Data Center were terminated.  PLAINTIFF also requested that the Credit Balance be applied to services provided in connection with the Ashburn Data Center.  The entire Credit Balance remains outstanding and is owed to PLAINTIFF.  Ultimately PLAINTIFF vacated the Ashburn Data Center on or about July 29, 2020 without receiving any recognition for the credit balance.  PLAINTIFF was required to contract with a third party, in the meantime, to remain in the LA Data Center, and paid that third party to remain in the LA Data Center.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

27.     PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 26 of this complaint as though fully and completely set forth herein.

28.     PLAINTIFF fulfilled all material terms of the Parties' contract.  To wit, PLAINTIFF made prompt payment of all fees and charges invoiced by DEFENDANT pursuant to the MSA, including advance payment of the amounts set forth on Invoice #5139A.  In fact, PLAINTIFF advanced payment for all services enumerated on all service orders, and associated with the LA Data Center for the time period from March 1, 2019 through December 31, 2019. PLAINTIFF fulfilled all other material terms of the MSA.

29.     As such, DEFENDANT had a duty to provide all services contracted for and associated with the LA Data Center from March 1, 2019 through December 31, 2019 without disruption.  .

7

30.     On or about June 20, 2019, however, DEFENDANT was evicted from the LA Data Center.  DEFENDANT failed to provide PLAINTIFF with services associated with the LA Data Center. DEFENDANT also failed to provide PLAINTIFF with access to the LA Data Center.

31.     The Parties agreed that DEFENDANT's failure to provide the services associated with LA Data Center left a Credit Balance in PLAINTIFF's favor in the amount of $1,139,827.80 not including interest.

32.     On July 2, 2019, DEFENDANT suggested that the Parties jointly petition DEFENDANT's bank for release of the entire Credit Balance to PLAINTIFF.

33.     Subsequently, the parties agreed that PLAINTIFF would withhold payment for services associated with the Ashburn Data Center, and the Credit Balance would be applied toward payment for those services.

34.     Ultimately, DEFENDANT reneged on its agreement to apply the Credit Balance toward services associated with the Ashburn Data Center.

35.     As such, DEFENDANT breached the terms of the MSA by failing to provide services associated with the LA Data Center from June through December 31, 2019. DEFENDANT then breached its promise to apply the Credit Balance to the fees associated with the Ashburn Data Center.  Ultimately PLAINTIFF vacated the Ashburn Data Center on or about July 29, 2020 without receiving any recognition for the credit balance.

36.     PLAINTIFF is owed $1,139,827.80 for the Credit Balance associated with the LA Data Center.  Moreover, PLAINTIFF is entitled to the benefit of its bargain.  DEFENDANT must, therefore, pay the difference in the amount PLAINTIFF paid to any third party for the same, or substantially similar services provided to Plaintiff at the LA Data Center in 2019.  PLAINTIFF is also entitled to attorneys' fees per the terms of the MSA, or by application of equity. PLAINTIFF

8

is entitled to attorneys' fees for the additional reason that DEFENDANT acted in bad faith. DEFENDANT's bad faith is shown by, among other things, the fact that PLAINTIFF was forced to bring suit to enforce legal claims that the DEFENDANT knew was valid, and indeed recognized as valid.

## SECOND CAUSE OF ACTION

### (Account Stated)

37.     PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 38 of this complaint as though fully and completely set forth herein.

38.     The Parties entered into an agreement whereby DEFENDANT promised to provide services associated with the LA Data Center to PLAINTIFF for the time period dating from March 1, 2019 through December 31, 2019.

39.     On or about June 20, 2019, DEFENDANT was evicted from the LA Data Center and failed to provide the services it promised to PLAINTIFF.

40.     The Parties then entered into discussions regarding DEFENDANT's failure to provide services associated with the LA Data Center.

41.     DEFENDANT agreed that it owed PLAINTIFF $1,139,827.80,  representing the amount remaining from the advance payment that PLAINTIFF made for services associated with the LA Data Center.

42.     DEFENDANT recognized that it owed Plaintiff the Credit Balance, and suggested that the Parties jointly petition DEFENDANT's bank for release of the full Credit Balance.

43.     Subsequently, the parties agreed that PLAINTIFF would withhold payment for services associated with the Ashburn Data Center, and the Credit Balance would be applied toward

9

payment for those services. Ultimately PLAINTIFF vacated the Ashburn Data Center on or about July 29, 2020 without receiving any recognition for the credit balance.

44.      While DEFENDANT recognized it owed PLAINTIFF the debt of $1,139,827.80 associated with its failure to provide services associated with the LA Data Center, it ultimately failed to provide any credit or value for that amount.  As such, PLAINTIFF is owed $1,139,827.80 and seeks to recover same by way of this Complaint, plus interest at the legal rate, costs, and attorneys' fees.

## THIRD CAUSE OF ACTION

### (Book Account)

45.      PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 46 of this Complaint as though fully and completely set forth herein.

46.      The Parties entered into a series of agreements dating back to 2006 for services related to the LA Data Center.  In 2016, the Parties entered into the MSA.

47.      Pursuant to the terms of the MSA, PLAINTIFF was to pay all fees and charges for services described in a "Service Order Form."   The MSA requires that DEFENDANT use reasonable efforts to deliver an invoice for recurring monthly service charges at least thirty (30) days prior to the first day of the month to which such invoice relates.  DEFENDANT did, in fact, invoice PLAINTIFF in advance for services, and offered a 10% discount to PLAINTIFF for advance payment of six months of service, and a 20% discount for advance payment of twelve months of service.

48.      In February of 2019, DEFENDANT offered PLAINTIFF a 10% discount for advance payment of services from March 1, 2019 through December 31, 2019.  By Invoice #5139A, ANEXIO requested advance payment from PLAINTIFF for the "SERVICE PERIOD"

of "3/01/19 – 12/31/2019.  Invoice #5139A states that DEFENDANT applied a "Pre-Payment Discount – 10%" in the amount of $211,079.25 for advance payment of services through the end of the year.  PLAINTIFF promptly advanced payment of the entire total stated on Invoice #5139A.

49.     A Book Account exists in the form of a detailed statement representing the debits and credits between the parties, and arising out of the MSA as well related service orders and invoices.   That Book Account provides that PLAINTIFF made advanced payment of $1,899,713.25 for services associated with the LA Data Center for the time period beginning March 1, 2019 and running through December 31, 2019.

50.     On or about June 20, 2019, DEFENDANT was evicted from the LA Data Center, and failed to provide the services that PLAINTIFF paid for in advance.

51.     Subsequently, the parties agreed that DEFENDANT owed PLAINTIFF a credit of $1,139,827.80 for services that DEFENDANT failed to provide.  As such, a Book Account exists whereby PLAINTIFF is owed $1,139,827.80, and seeks that amount by way of its Complaint. PLAINTIFF also seeks an award of costs, interest, and any further relief at law or equity that the Court deems appropriate.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

52.     PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 53 of this Complaint as though fully and completely set forth herein.

53.     Pursuant to DEFENDANT's request, PLAINTIFF made advance payment for services associated with the LA Data Center.  Specifically, PLAINTIFF made advance payment of $1,899,713.25 for services associated with the LA Data Center that were to be provided by DEFENDANT from March 1, 2019 through December 31, 2019.

11

54.     On or about June 20, 2019, DEFENDANT was evicted from the LA Data Center and subsequently failed to provide such services.

55.     As a result of DEFENDANT's eviction, PLAINTIFF was forced to contract with a third party to provide the same, or substantially similar services at the same location.  PLAINTIFF was, therefore, forced to pay twice for the same services from June 20, 2019 through December 31, 2019.

56.     DEFENDANT agreed to provide PLAINTIFF with a refund, or a credit in the amount of $1,139,827.80 for services that DEFENDANT failed to provide.  Ultimately, however, DEFENDANT failed provide a refund, or anything of value in return for the Credit Balance.

57.     As such, PLAINTIFF was wrongfully deprived of $1,139,827.80, and continues to be deprived of that sum.  Although DEFENDANT recognizes the wrongful nature of its conduct, DEFENDANT has failed to compensate PLAINTIFF for the wrongful deprivation of $1,139,827.80.

58.     Thus, DEFENDANT was unjustifiably enriched in the amount of $1,139,827.80.

59.     In the event there is no adequate remedy at law, PLAINTIFF therefore seeks by way of this Complaint $1,139,827.80 from Defendant, interest at a legal rate, costs, and any other remedy at equity that the Court deems appropriate including attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as follows:

1.     For damages owed in law, and at equity for $1,139,827.80;

2.      Any and all consequential damages stemming from DEFENDANT's breach of the

Parties' agreements including, but not limited to, business interruption damages and the benefit of

the bargain for any and all services associated with the LA Data Center.

3.      For interest at the legal rate;

4.      For additional damages according to proof;

5.      Reasonable attorneys' fees according to proof;

6.      Costs of suit incurred herein; and,

7.      Such other and further relief as the court may deem just and proper.


## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PLAINTIFF demands trial by

jury in this action of all issues so triable.


Dated:    October 2, 2020                 **COZEN O'CONNOR**

     */s/ Gregory Fischer*
Gregory Fischer (DE 5269)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2017
E-mail:  gfischer@cozen.com

Paula Zecchini (*pro hac vice* to be submitted)
Nathan Dooley (*pro hac vice* to be submitted)
601 S Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: (213) 892-7900
E-mail: pzecchini@cozen.com
       ndooley@cozen.com

*Attorneys for Plaintiff*
GODADDY MEDIA TEMPLE INC.